SCA CHEMICAL WASTE SERVICES, INC., Appellant-Respondent, v BOARD OF APPEALS OF THE TOWN OF PORTER et al., Respondents-Appellants.

Fourth Department, May 30, 1980

APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear (H. Kenneth Schroeder, Stephen H. Kelly, Robert W. Keller* and *Anne Simet* of counsel), for appellant-respondent.

*Orr, Brydges & Orr (George A. Orr, Jr.,* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

CALLAHAN, J.

Petitioner, SCA Chemical Waste Services, Inc., formerly known as Chem-Trol Pollution Services, Inc., operates a hazardous and industrial waste disposal plant. This plant, which has been in operation since 1972, is located in a "controlled nuisance industrial" district in the Town of Porter. On this site petitioner treats, recovers and disposes of solid and liquid waste. One of the end products of such operation is treated wastewater. Since 1974, petitioner has had a permit for discharge of wastewater to the Niagara River issued by the New York State Department of Environmental Conservation in accordance with State and Federal water pollution laws. Because petitioner did not have any means of transporting the wastewater from its plant to the Niagara River, petitioner's permit was modified in 1978 after a public and quasi-judicial hearing, to permit discharge of wastewater into an intermittent stream (known locally as Six Mile Swale/Four Mile Creek) during periods of substantial flow of water in the stream. This permit proved to be an unacceptable remedy because of insufficient flow in the stream to permit adequate discharge of wastewater that had already accumulated on petitioner's site as well as what might reasonably be expected to result from future operations. To alleviate this situation, petitioner sought other means of disposing of the wastewater. In 1979, after petitioner had negotiated for and purchased the necessary easements between its plant and the Niagara River, it applied to the New York State Department of Environmental Conservation (DEC) for permission to construct a pipeline to carry treated wastewater from its plant to the Niagara River, a distance of approximately five miles.

Inasmuch as the Town of Porter took the position that permits were required from its zoning board of appeals, on February 22, 1979 petitioner applied for (1) an excavation permit pursuant to sections 551.2 and 710.99 (Local Laws,

1968, No. 1 of Town of Porter) of the Town of Porter Zoning Law; (2) a development permit pursuant to the Flood Plain Management Law (Local Laws, 1977, No. 4 of Town of Porter); and (3) a use permit pursuant to section 481.1 (Local Laws, 1973, No. 3 of Town of Porter) of the zoning law. In addition to these permits, petitioner, under protest, applied to respondent Seefeldt, Building Inspector for the Town of Porter, for a building permit. Respondents took the position that these permits were required because the proposed pipeline would run from petitioner's property through areas zoned Agricultural Rural Residential 100 (ARR 100), Multi-Family 80 (MF80) and Niagara River Environmental (NRE).

A public hearing was conducted on July 20, 1979 by the board of appeals to consider petitioner's applications for special permits. The Town of Porter agreed that the DEC should take lead agency status in the matter of the SCA pipeline. On completion of the hearing the board concluded that they should take no action until the DEC issued its final environmental impact statement and decision on the matter of the proposed pipeline project. Following the decision of the Department of Environmental Conservation in January, 1980 approving, with conditions, construction of the proposed pipeline, the board of appeals, without any further public hearing denied the applications for the building permit, the excavation permit, the development permit and the special use permit without deciding whether petitioner had met the criteria for the issuance of such permits under the applicable provisions of the zoning ordinance and solely because:

1. "The pipeline activity, including the construction, use patrolling and maintenance thereof, constitutes an industrial activity which is not permitted in ARR 100, MF80 or NRE zones under the Town of Porter Zoning Law"; and

2. "The pipeline activity, including the construction of structures, is not a permitted use in the NRE zone under the Town of Porter Zoning Law[.]"

Additionally, although unnecessary in view of its finding that the use was totally prohibited as an industrial activity, the board found as a third reason for its denial that: 3. "Undetected leakage of wastewater from the pipeline constitutes an adverse environmental impact in that it may contaminate residential wells near the pipeline and may damage or destroy crops raised on adjacent agricultural lands."

Petitioner commenced this CPLR article 78 proceeding to

review the board's action and seeking to compel the issuance of the required permits in connection with the proposed pipeline construction. Special Term of Supreme Court, Niagara County, denied SCA's petition and affirmed the conclusions of respondent board of appeals, except for conclusion number 3 of the board's decision which was nullified as not being supported by evidence. It is from the judgment entered in accordance with this decision that the parties appeal.

The principal issue for our determination is whether the proposed underground pipeline constitutes an "industrial use" prohibited in agricultural, residential and environmental zones under the Town of Porter Zoning Law. Underground pipelines, such as the one proposed by petitioner, are not mentioned in the Town of Porter Zoning Law either as permitted uses or prohibited uses in any zone. The board of appeals maintains that the pipeline is an "industrial use" because it is "appurtenant to the industrial activity of SCA". The board urges that this five-mile underground pipeline carries with it (figuratively and literally) petitioner's private industrial character and imposes that burden upon the lands which have been zoned agricultural, residential and environmental reserve, through which it passes. We cannot agree.

The zoning board of appeals was in error in holding that the conducting of treated wastewater from the treatment facility to an approved disposal area was an industrial use or activity and as such prohibited in all zones except the industrial district under the Town of Porter Zoning Law. No part of the industrial process and no treatment of the effluent take place within the pipe and the quantity and content of the substance are not altered in any way during transit through the pipe from the treatment facility to the point of disposal. The pipeline plays no part in the treatment process but serves solely as a vehicle for transporting the material after the process has been completed.

Nor, as respondent contends, is the operation and maintenance of an underground pipeline a use or activity that was intended to be controlled under the zoning ordinance of the Town of Porter so that by the terms of the ordinance such use must be considered to be prohibited in every zoning district in which it is not specifically permitted. A zoning ordinance is to be strictly construed against the municipality, not against the property owner (*Town of Ithaca v Lucente,* 36 AD2d 560, 561). Underground pipelines or similar facilities are not enumer-

ated as uses or activities covered in any of the provisions of the zoning ordinance and there is nothing in the ordinance or the circumstances surrounding its adoption suggesting that the ordinance was intended to cover the operation of an underground pipeline as a controlling use. An underground pipeline is not a facility generally considered capable of having the adverse visual and environmental impact on neighboring property owners of the type which ordinarily warrants zoning controls. It does not alter the character or contour of the land and its existence is virtually undetectable by surface observation. Thus the construction of the Town of Porter Zoning Law as impliedly embracing an underground pipeline as a controlled use or activity and one that is intended to be prohibited because it is not specifically permitted in the ARR 100, MF80 and NRE zones would not further the purpose of the zoning ordinance in eliminating adverse environmental consequences and thereby promoting the welfare, safety, morals, or general welfare of the community (2 Anderson, American Law of Zoning [2d ed], § 9.24, p 151; see *Euclid v Ambler Co.*, 272 US 365, 391-394).

Moreover, the action of the board in denying the permits cannot be justified by its finding that the pipeline facility proposed here possesses a potential capability of producing adverse environmental consequences because the substance to be carried is treated wastewater. The Commissioner of Environmental Conservation has determined that the proposed pipeline would not cause any adverse environmental impact. Based on that determination of the commissioner, Special Term properly vacated as inconsistent therewith the finding of the board of appeals that undetected leakage from the pipeline would constitute an adverse environmental impact. We therefore affirm Special Term's vacatur of the board's third stated reason for its denial and reject respondents' contentions pertaining thereto in their cross appeal.

Accordingly, the petition should be granted and respondents directed to issue the necessary permits.

HANCOCK, JR., J. P., SCHNEPP, DOERR and WITMER, JJ., concur.

Judgment unanimously reversed, on the law, with costs to petitioner, petition granted in accordance with opinion by CALLAHAN, J., and respondents directed to issue necessary permits.